## AFFIDAVIT IN SUPPORT OF CRIMINAL COMPLAINT

I, Geoffrey Paige, a Special Agent with Homeland Security Investigations, being duly sworn, depose and state as follows:

### INTRODUCTION AND AGENT BACKGROUND

1.  I am a Special Agent with the United States Department of Homeland Security ("DHS"), Immigration and Customs Enforcement, Homeland Security Investigations ("HSI"), assigned to the office of the Special Agent in Charge ("SAC") in New England. I have been a Special Agent since August 2022, and I am assigned to the Child Exploitation and Forensics Group. My formal law enforcement training includes successfully completing the Criminal Investigator Training Program and the Homeland Security Investigations Special Agent Training at the Federal Law Enforcement Training Center in Glynco, Georgia.

2.  As an HSI agent, I am authorized to investigate violations of the laws of the United States, including criminal violations relating to child exploitation, child pornography, coercion and enticement, and transportation of minors, including but not limited to violations of 18 U.S.C. §§ 2422, 2251, 2252, and 2252A. I have received training in the investigation of child pornography and have reviewed examples of child pornography as defined in 18 U.S.C. § 2256.

3.  This affidavit is submitted in support of an application for a criminal complaint charging Juan LEVANO ("LEVANO") (YOB 2000) with receipt of child pornography, in violation of 18 U.S.C. §§ 2252A(a)(2)(A) and (b)(1).

4.  The facts set forth in this affidavit are based on my own personal knowledge, knowledge obtained from other individuals during my participation in this investigation, including other law enforcement officers, my review of documents and records related to this investigation, communications with others who have personal knowledge of the events and circumstances

1

described herein, and information gained through my training and experience. This affidavit does not contain every fact known to me with respect to this investigation. Rather, it contains those facts that I believe to be necessary to establish probable cause for the issuance of the requested criminal complaint.

## PROBABLE CAUSE

### Background On Chat Application A

5. Law enforcement has become aware of a secure online chat platform, hereinafter referred to as "Chat Application A."[1]  In review of Chat Application A's website[2] and other law enforcement resources, I have learned that Chat Application A is a communications-based platform available on the internet to users worldwide. Service is offered through a web-based application, along with mobile applications. Chat Application A's services include instant messaging, voice calls, video calls, and file sharing capabilities. Chat Application A allows users to have personal, one-on-one chats, or to have larger scale group chats with other Chat Application A users. Chat Application A provides for three different formats of large-scale chatting: groups, communities, and channels. All chats are protected by end-to-end encryption, meaning that only the sender and receiver(s) of a chat have access to the content, and nothing is stored on any servers once delivered.

---

[1] Law enforcement knows the name of Chat Application A. However, the investigation into users of Chat Application A remains ongoing, and public disclosure of Chat Application A's actual name potentially could alert its members to the investigation and cause members to flee or destroy evidence. Accordingly, to preserve the confidentiality and integrity of the ongoing investigation, the actual name and other identifying details of Chat Application A remain undisclosed in this affidavit.

[2] I know that Chat Application A updates its website content and informational blog posts often, and the information set forth here is derived in part from information obtained from Chat Application A's website as of the date that this affidavit was drafted.

6. To access Chat Application A, a user must create an account, which requires him or her to provide a cellular phone number. The account cellular phone number is sent a verification text message with a verification key code that must be entered in the application in order to activate the account. A user also is asked to provide a full name, birthdate, and email. The full name field, which becomes the user's display name in the application, is the only field required to continue into the application and can be any name the user chooses to enter. Once a name is entered, a user is asked to verify their age by stating if they are above or below 16 years of age. Upon opening Chat Application A, both the user's verified phone number and display name are visible on the right side of the messaging board.

7. Based on my training and experience, and training and experience of others I have spoken with, I know that Chat Application A often is used for, among other things, illegal activity, including access to, and the exchange of, child pornography, because of the high degree of anonymity that is offered to Chat Application A users.

## The Pretoria Lead

8. On or about November 16, 2023, HSI Pretoria in South Africa assisted the South African Police Service ("SAPS") during the arrest of a South African national (hereinafter, "Person 1") for the possession and distribution of child pornography in violation of South African law. During the execution of the arrest, Person 1 consented to allow HSI to assume his online identity on Chat Application A (hereinafter referred to as "Assumed Account 1"). HSI Pretoria determined that Assumed Account 1 was a member of two large-scale chats involving numerous individuals trading in child pornography.

9. During the review of the groups within Chat Application A, agents found that a registered user with a username (hereinafter "Suspect Username") with a verified phone number

ending in 3783 (hereinafter collectively referred to as the "SUBJECT ACCOUNT") was a participant in at least two groups where child pornography was disseminated.

### Identification of LEVANO as the SUBJECT ACCOUNT User

10. Through its investigation, law enforcement learned that on January 22, 2023, phone number ending in 3783 (the number associated with the SUBJECT ACCOUNT) registered and activated Chat Application A on a device.[3] Law enforcement also identified two internet protocol ("IP") addresses used to access the SUBJECT ACCOUNT on various dates, one of which was associated with an address in West Bridgewater, MA ("SUBJECT PREMISES"). Records show that the phone number associated with the SUBJECT ACCOUNT is also subscribed to the SUBJECT PREMISES.

11. The SUBJECT PREMISES is listed as LEVANO's residence in records maintained by the Massachusetts RMV, as well as in paperwork LEVANO submitted to the Executive Office of Immigration Review (EOIR). Records reviewed in the investigation of this matter indicate that the SUBJECT PREMISES is a registered and certified home daycare for children operated by the owner of the SUBJECT PREMISES.

### Execution of Search Warrants at LEVANO'S Residence

12. Based in part on the foregoing information, law enforcement obtained federal warrants to search LEVANO's person and residence (the SUBJECT PREMISES) in West Bridgewater, Massachusetts. *See* Case Nos. 23-MJ-1531 and -1532-DLC (SEALED). The affidavit submitted in support of the search warrants is attached as Sealed Exhibit 1 and incorporated herein by reference.

---

[3] A law enforcement search of Chat Application A revealed that the SUBJECT ACCOUNT was last active on Chat Application A on December 18, 2023, at 11:06 A.M.

13.     On December 20, 2023, at approximately 6:10 a.m., agents executed the federal search warrants. LEVANO was not initially present, but he arrived at the SUBJECT PREMISES soon thereafter.

14.     Agents advised LEVANO in Spanish of his rights pursuant to *Miranda* both verbally and in writing. LEVANO indicated that he understood those rights, waived them in writing, and agreed to speak with agents. The interview was audio recorded; LEVANO's statements are summarized herein rather than recounted verbatim unless indicated otherwise.

15.     LEVANO told agents that he rents a room at the SUBJECT PREMISES and does not work at the residential daycare or have contact with the children who attend it, which was confirmed by the owner of the SUBJECT PREMISES.

16.     During the interview, LEVANO stated that he had Chat Application A on his mobile device. LEVANO stated that he had downloaded Chat Application A after receiving a message on Facebook from an unknown person that contained a link for Chat Application A. He estimated that he began using Chat Application around May 2023 in a moment of curiosity and found that he was sexually aroused by the images he saw on the application. He stated that he was part of about 10 group chats in Chat Application A and indicated that he saved child pornography files from Chat Application A to his iPhone photo gallery. He also indicated that he might have some files saved in his Gmail account. LEVANO told agents that his collection included children as young as babies, but that he was primarily attracted to girls around 12 or 13 years of age.

17.     LEVANO stated that he has an iPhone, laptop, and tablet. LEVANO confirmed that his cell phone number is the number ending in 3783, which is the verified phone number associated with the SUBJECT ACCOUNT. An iPhone 14 ProMax was recovered from

5

LEVANO's person and has the phone number ending in 3783. This device was manufactured outside the District of Massachusetts.

18. During initial review of the iPhone, agents located Chat Application A and determined that the account was registered to phone number ending in 3783 (i.e., LEVANO's phone number). Within LEVANO's Chat Application A account, agents identified approximately 100 different conversations[4] of which LEVANO was a participant, apparently beginning on or about November 2023 through the present. The titles of these conversations referenced terms for children in Spanish or included the letters "CP." A review of one conversation revealed approximately 227 participants, and the content of the conversation was focused on child pornography files. On December 16, 2023 at approximately 2:58 a.m., a Chat Application A participant in that conversation sent seven video files in the conversation, six of which appeared to depict child pornography. The following are two examples of the files located in that conversation within Chat Application A:[5]

---

[4] It is not yet clear whether these conversations occurred within groups or communities of Chat Application A.

[5] I am aware that the "preferred practice" in the First Circuit is that a magistrate judge view images that agents believe constitute child pornography by virtue of their lascivious exhibition of a child's genitals. *United States v. Brunette*, 256 F.3d 14, 17-19 (1st Cir. 2001) (affiant's "legal conclusion parroting the statutory definition […] absent any descriptive support and without an independent review of the images" insufficient basis for determination of probable cause). Here, however, the descriptions offered "convey to the magistrate more than [my] mere opinion that the images constitute child pornography." *United States v. Burdulis*, 753 F.3d 255, 261 (1st Cir. 2014) (distinguishing *Brunette*). The children described herein are approximately 6 to 12 years old – in all events, younger than eighteen. Furthermore, the descriptions of the files here are sufficiently specific as to age and appearance of the alleged child as well as the nature of the sexual conduct pictured in each file, such that the Court need not view the files to find that they depict child pornography. *See United States v. Syphers*, 426 F.3d 461, 467 (1st Cir. 2005) ("The best practice for an applicant seeking a warrant based on images of alleged child pornography is for an applicant to append the images *or provide a sufficiently specific description of the*

a. A video that is approximately 37 seconds in length, which depicts a prepubescent female, who is seen laying on her back wearing a red and white striped shirt, with her legs pulled up exposing her vagina to the camera. The child appears to be approximately 6 to 7 years old based upon the overall size of her body, her childlike facial features, and the lack of pubic hair or breast development. Throughout the video, an adult male is seen inserting his erect penis into the prepubescent female's anus and in the area of her vagina.

b. A video that is approximately seven seconds in length, which depicts a prepubescent female, who is seen nude from the waist down, wearing a purple plaid top that is pulled up, positioned on top of an adult male. The child appears to be approximately six to eight years old based upon the overall size of her body and vagina, as well as the lack of pubic hair. The adult male is positioned underneath the prepubescent female, and he is seen repeated inserting his erect penis into her vagina, with his hands wrapped around her waist.

19. A review of the iPhone 14's photos application was conducted, and agents discovered approximately 109 videos and four images in a hidden album, many of which appear to depict child pornography. The hidden album is a feature that is available on most recent Apple

---

*images* to enable the magistrate judge to determine independently whether they probably depict real children.") (emphasis added); *see also United States v. LaFortune*, 520 F.3d 50, 56 (1st Cir. 2008) (similarly emphasizing *Syphers* court's use of "or" in describing the *Brunette* "best practice"). Where I have included such nonconclusory, sufficiently specific description, this Court need not view the imagery to find that they depict child pornography. Nonetheless, the described imagery is available for review at the Court's request.

operating systems. These files in the album appeared to depict prepubescent females and males, ranging in age from approximately six to 12 years old. The children are observed in the videos posing nude or performing sexual acts on themselves, or being orally, vaginally, or anally penetrated by adult males. The following file is an example of the child pornography files located in the hidden album within LEVANO's photos application:

    a.    A video that is approximately two minutes and 50 seconds in length, which depicts a prepubescent female laying on her back wearing a blue and white shirt that is pulled up to expose her vagina. The child appears to be approximately 6 to 8 years old based upon her childlike facial features, the overall size of her body, and the lack of pubic hair and breast development. The camera is initially focused in on the child's vagina, and an adult hand is seen placing his fingers in and around her vagina. At one point during the video, another minor child, who appears to be sleeping, is observed laying next to her.

20. The iPhone and other devices seized pursuant to the warrants remain in the custody of HSI; further forensic analysis is pending.

(this space intentionally left blank)

## CONCLUSION

21. Based on the foregoing, I submit that there is probable cause to believe that from at least in or about May 2023 through on or about December 20, 2023, in the District of Massachusetts, LEVANO knowingly received any child pornography, as defined in Title 18, United States Code, Section 2256(8), that had been mailed, and shipped and transported using any means and facility of interstate and foreign commerce and in and affecting interstate and foreign commerce by any means, including by computer, in violation of 18 U.S.C. §§ 2252A(a)(2)(A) and (b)(1).

Accordingly, I respectfully request that that the Court issue the requested criminal complaint.

Sworn to under the pains and penalties of perjury,

*Geoffrey Paige* DLC

Special Agent Geoffrey Paige
Homeland Security Investigations

SWORN before me telephonically pursuant to Fed. R. Crim. P. 4.1(d)(3) this 20th day of December 2023.

HONORABLE DONALD L. CABELL
CHIEF UNITED STATES MAGISTRATE JUDGE